IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEON GREENBLATT, CHIPLEASE, INC., and BANCO PANAMERICANO, INC., | )<br>)<br>)<br>) |
| Appellants, | ) Case No. 06 C 0892<br>) |
| v. | )<br>) |
| JAY A. STEINBERG, Chapter 7 Trustee for the Estate of Resource Technology Corporation, | )<br>)<br>)<br>) |
| Appellee. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

On February 7, 2006, Chief Bankruptcy Judge Eugene Wedoff issued an order approving a bankruptcy trustee's proposed sale of five turbines used to collect methane gas from garbage landfills. Leon Greenblatt, Chiplease, Inc., and Banco Panamericano, Inc. (collectively, the appellants), secured creditors of the debtor, Resource Technology Corporation (RTC), appeal from that order.[1] For the reasons stated below, the Court affirms the bankruptcy judge's ruling.

**Background**

Before entering bankruptcy, RTC was in the business of collecting methane gas emitted from garbage landfills and converting it into usable energy. For several years, the company attempted to reorganize its business under chapter 11 of the Bankruptcy Code, but when it

---

[1] In their brief, appellants state that they are appealing two different orders (docket nos. 3056, 3057). The substance of the 3056 order, however, is repeated in the 3057 order. For this reason, review of the 3057 order subsumes the entirety of the appeal.

became unlikely that the business would ever be profitable, the chapter 11 case was converted to a chapter 7 liquidation case.

Recently, the bankruptcy trustee, Jay Steinberg, sought to sell four turbines and a generator that now sit idle at three of RTC's sites of operation. The equipment is used to convert methane gas to electricity. After receiving a $6,000,000 bid from DTE Biomass Energy, Inc. (DTE), the trustee attempted to maximize the final sale price by publicly soliciting bids from other companies. He filed a motion asking the bankruptcy court to issue a sale procedures order, which instructed potential bidders how to make a proper bid. The bankruptcy court granted the motion on January 12, 2006.

The sale procedures order required potential bidders to submit bids of no less than $6,300,000 by January 30, 2006 and allowed secured creditors with a first priority lien to "credit bid"[2] on the assets being sold. The order recognized Network Electric Company (NEC) as the presumed first priority lien holder and required any party contesting NEC's status as credit bidder to file an objection with the bankruptcy court on or before January 17, 2006. Any party making such an objection was also required to appear at a hearing on January 26, 2006 to determine the "nature, extent or validity of NEC's liens on the Sale Assets." *See* January 12, 2006 Order, Ex. A ¶14.

On January 17, 2006, the appellants filed an adversary complaint against NEC for breach of contract; the complaint effectively sought to revoke NEC's status as first priority lien holder

---

[2] "'[C]redit bidding' is the practice of allowing a foreclosing lender to bid the amount of its mortgage debt including allowable expenses, rather than requiring the lender to bid with cash." *FDIC v. Meyer*, 781 F.2d 1260, 1264 (7th Cir. 1986).

based on various claimed defaults by NEC in its agreement with RTC. On the same day, the appellants served voluminous discovery requests on NEC, including requests to admit and notices of depositions, and they demanded compliance on an expedited basis – within two days or less. When NEC refused to comply, the appellants moved to compel discovery and to continue the February 6, 2006 sale hearing pending compliance with the discovery requests.

On January 26, 2006, the bankruptcy judge denied the appellants' motions. He told Mr. Jordan, counsel for the appellants:

> I have heard enough to rule on this matter. The discovery requests that you have made, Mr. Jordan, are unreasonable. It is not reasonable to expect 30(b)6 witnesses to be prepared and presented on two days notice. It is not reasonable to expect that there would be responses to requests to admit in one day. And the discovery seems to be much broader than would be needed to enable a determination of the credit bid question for purposes of the proposed sale. So I'm going to deny that motion to compel compliance with the discovery. And in light of the fact that the discovery requests were unreasonable, I am not going to hold that the failure to comply with those discovery requests is grounds for delaying the sale hearing. If you want to attempt to get a more limited amount of discovery focused precisely on questions dealing with the validity of the NEC liens here, I would be happy to consider that discovery request, and I would urge [opposing counsel] to cooperate with you in preparing or presenting discovery information that would be relevant to that. But this is not that, and, therefore, the rulings of the court will be that both motions are denied.

Jan. 26, 2006 Tr. at 13-14.

After the bankruptcy court's ruling, appellants' counsel requested that the hearing on objections to NEC's lien be continued to a future date. In response, the bankruptcy court said:

> You don't have a motion dealing with the validity of their lien. There is nothing before me to continue. You've got a motion to enforce your discovery requests, which I am denying because they are unreasonable. And you've got a request to continue the hearing on the sale, which I am also denying. And I think you're going to need to formulate new discovery requests that are more narrowly focused. And I urged [NEC's counsel] to cooperate with you in that regard. If you don't get what you believe to be reasonable cooperation, then you can bring another motion. But the two motions that are before me today are denied.

*Id.* at 14.

On January 30, 2006, the appellants served the trustee with a letter purporting to bid on the assets. The letter included three alternate bids: the first two bids were credit bids, and the third was a cash bid that was far less than the amount offered by DTE. On February 2, 2006, the bankruptcy court ruled that the appellants could not credit bid because the court had not determined that they were first priority lien holders. It further ruled that the appellants' cash bid was invalid because it was less than DTE's bid. After the bankruptcy court issued its ruling in open court on February 2, the appellants reasserted their objections to the sale, and the bankruptcy court said it would take the objections up at a hearing on February 6.[3]

On February 6, the bankruptcy court asked appellants' counsel whether there were factual issues that needed to be resolved before it could rule on whether or not to approve the sale. Counsel replied that there were three issues: whether the sale was in the best interests of the estate, whether NEC had a valid first priority lien, and whether it was in the best interest of the estate to reject a contract to operate at a landfill site owned by Congress Development

---

[3] MR. JORDAN: Well, I think they have to have a hearing, Your Honor, with regard to our objection, which isn't before the court today.
THE COURT: Well, I'll take that up when it comes up. I think there is a question of the timeliness of the objection. But we'll deal with that when it is made.
MR. STEINBERG: That's the objection in the adversary, I believe.
MR. JORDAN: No. We have an objection on the date that objections were due to the sale.
THE COURT: Okay.
MR. STEINBERG: I suggest we have a hearing as soon as the parties are ready.
THE COURT: Well, I think that that's noticed up for February 6, is it not, Mr. Jordan?
MR. JORDAN: That is correct, Your Honor.
THE COURT: All right, we'll have it then.

Feb. 2, 2006 Tr. at 8-9.

Company (Congress). With regard to the second issue, the court said:

> That's not an issue I'm going to hear evidence on today because the sale is subject to liens. And, as you point out in the objection that you brought to immediate payment of NEC, if the funds are held in a trust account pending resolution of your complaint to determine the priority of liens, there will be no harm to your client.

Feb. 6, 2006 Tr. at 7. Appellants' counsel did not object to the bankruptcy court's ruling on this point.

The bankruptcy court proceeded to hear testimony concerning the two other issues presented by the appellants. The trustee introduced evidence supporting his contention that the sale of the turbines was in the best interests of the estate. He testified that the removal of the turbines would not exacerbate any environmental problems because the turbines had been taken off line, and Congress, the landowner, had installed a flare to burn off the methane gas. *See* Feb. 6, 2006 Tr. at 16-18. The trustee also introduced evidence that the rejection of the gas rights agreement at Congress was in the best interests of the estate. Specifically, he testified that the site had not been able to produce enough gas to operate the turbines effectively, there were substantial litigation costs associated with assuming the gas rights agreement, the expense associated with assumption of the contract was far in excess of the estate's assets, and the revenues derived from operating the facility did not cover the expenses of operating the facility. *Id.* at 19-24. The appellants then called the president of RTC, who testified that the Congress site was in violation of permits and environmental statutes. *Id.* at 49-51. Finally, Illinois Assistant Attorney General Michael Partee testified that the Illinois EPA had reviewed the proposed sale of equipment to DTE and had no objection on grounds that the sale violated state environmental or permitting laws. *Id* at 68.

After hearing the evidence, the bankruptcy court found in favor of the trustee on both

issues. First, it held that the sale posed little potential for increased liability on the estate, because the evidence showed that Congress, not RTC, was responsible for addressing any environmental problems stemming from methane gas in the landfill. *Id.* at 84-85. Second, it held that the trustee had met his burden of showing that rejection of the gas rights agreement at Congress was in the best interests of the estate. The court found that operating expenses were substantial and that the potential for future gas flows at the site were speculative. *Id.* at 86-87.

On February 7, 2006, the bankruptcy court issued an order approving the sale of assets to DTE and finding that the appellants' bids did not conform with the sales procedure order. *See* February 7, 2006 Order Granting Motion to Approve. Appellants appeal the ruling.

**Standard of Review**

The Court reviews the bankruptcy judge's conclusions of law *de novo* but reviews his factual findings for clear error. *In re Sheridan,* 57 F.3d 627, 633 (7th Cir. 1995); *In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir. 1990). "The clearly erroneous standard . . . does not permit a trier of fact to be overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" *In re Bonnett,* 895 F.2d at 1157 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985)). Rather, if "two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *Id.* (citing *EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir. 1988)).

**Discussion**

The appellants argue that the bankruptcy court's order should be reversed for three different reasons: the bankruptcy court failed to recognize appellants' valid credit bid; the trustee did not exercise proper business judgment in approving the sale; and RTC should not

6

have been allowed to sell its assets free and clear of all liens, claims, and encumbrances. *See* Appellants' Brief at 10, 14, 20.

1.  **The credit bid**

Appellants first argue that the bankruptcy court denied their credit bid based on the erroneous belief that the appellants had not filed an objection to NEC's status as priority lien holder. They maintain that the adversary complaint they filed against NEC on January 17, 2006 was a valid objection to NEC's claim and thus satisfied the requirements of the bankruptcy court's January 12, 2006 sales procedure order. The parties disagree whether the Court should review this issue *de novo* or under a more deferential standard. The Court need not resolve the dispute, however, because even under the less deferential standard, the outcome is the same. *See Stotler and Co. v. Able*, 870 F.2d 1158, 1166 (7th Cir. 1989).

At the outset, the Court notes that the record does not support appellants' contention that the bankruptcy court refused to allow them to credit bid because they did not file an objection to NEC's claims. On January 26, 2006, the Court ruled on two written motions, neither of which concerned the status of NEC's lien. The first was a motion to compel discovery, and the second was a motion to postpone the sale. The bankruptcy court denied both motions because appellants' discovery requests were unreasonable, a ruling the appellants do not contest on appeal. The appellants then made an oral motion to extend the hearing on the validity of NEC's liens, which the bankruptcy court also denied.

Even if, as appellants argue, the bankruptcy court mistakenly denied this oral motion on the ground that there was no motion before it contesting the validity of the liens, the court did not preclude appellants from filing a later request (as soon as time would allow) to contest the

liens before the sale. To the contrary, the bankruptcy court encouraged counsel to narrow its discovery requests and file another motion if NEC refused to comply. Indeed, even on February 2, 2006, the bankruptcy court reminded the appellants that they could present evidence in support of their objections at the February 6, 2006 hearing. Far from supporting appellants' contention that the bankruptcy court denied their credit bid because it refused to recognize the form of their objection, the record actually reflects that the court provided appellants ample opportunity to craft their objection. The appellants, however, did not take advantage of the opportunity.

In any event, as the trustee and DTE argue, the bankruptcy court's sale procedures order required a party contesting NEC's status as priority lien holder to do more than simply make an objection by January 17. It also required appellants to appear at a January 26, 2006 hearing to determine "the nature, extent and validity of NEC's liens on the Sale Assets." Not only did appellants fail to present evidence concerning the status of NEC's lien on January 26, they *never* presented such evidence, even though the bankruptcy judge had encouraged them to seek out such evidence through refined discovery requests. Consequently, even if – as appellants argue – the bankruptcy court erroneously determined that they failed to make an objection on NEC's lien, the appellants did not meet the second requirement of the sale procedures order, which required them to challenge the nature, extent, or validity of NEC's lien. For these reasons, the bankruptcy court did not err in refusing to allow the appellants to credit bid.

### 2. The trustee's business judgment

The appellants next argue that the bankruptcy court erred as a matter of law in ruling that the trustee exercised proper business judgment in approving the sale. This argument, however,

does not present an issue of law or even a mixed question of law and fact. Instead, appellants contest the two of the factual findings underlying the bankruptcy court's ruling. Appellants contest the bankruptcy court's findings that the turbine sale – and its effects on the environment – posed little risk of liability to the estate and that any future profits that RTC might realize from the Congress site were speculative at best. Absent clear error, the Court defers to the bankruptcy court's factual findings concerning the likely financial consequences of the proposed sale. *See In re Smith*, 286 F.3d 461, 465 (7th Cir. 2000).

Both of the bankruptcy court's factual findings are amply supported by the record. With respect to the first finding, the Court can hardly imagine stronger evidence than testimony from a representative of the Illinois EPA that it had no objection to the sale on environmental grounds. With respect to the second factual finding, the trustee testified that the Congress site had been unable to produce enough gas to operate the turbines effectively, there were substantial litigation costs associated with assuming the gas rights agreement, the expense in assuming the contract exceeded the estate's assets, and the revenues derived from operating the facility exceeded expenses. This evidence more than adequately supported the bankruptcy court's factual finding, even recognizing – as the trustee did – that additional wells were being installed at the site. Future profits from the Congress agreement were properly characterized as speculative, and the bankruptcy court did not err in so concluding.

### 3. Sale free of liens and encumbrances

Appellants' last argument is that RTC should not have been allowed to sell its assets free and clear of all liens, claims, and encumbrances. As DTE and the trustee point out, however, this argument was not raised in the bankruptcy court. Moreover, in their reply brief, appellants

do not contend that they preserved this argument. The Court finds that the argument has been forfeited. *See In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992).

**Conclusion**

For the reasons stated above, the Court affirms the February 7, 2006 decision of the bankruptcy court. DTE's motion to strike [docket no. 18] is denied as moot; the Court did not refer to the disputed exhibits in making its ruling. The stay of the sale previously imposed by the Court is lifted. The Clerk is directed to enter judgment affirming the decision of the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 2, 2006